IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MONG'S DAIRY, A DIVISION OF SCHNEIDER'S DAIRY, INC. | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) )  Case No.  2:20cv482 |
| TEAMSTER'S LOCAL UNION NO. 205 | ) ) ) |
| Respondent. | ) ) |

**COMPLAINT TO VACATE ARBITRATION AWARD**

Plaintiff Mong's Dairy, a Division of Schneider's Dairy, Inc. ("Schneider's Dairy" or "Schneider's"), by and through its undersigned counsel, hereby files this complaint to vacate the arbitration decision (attached hereto as Exhibit "A") issued against it in favor of Respondent Teamster's Local Union No. 205 ("Respondent" or "Union"), stating as follows:

**I.    JURISDICTION AND VENUE**

1.    This is a complaint to vacate an arbitration decision issued pursuant to a now-expired collective bargaining agreement between Schneider's Dairy and the Union (attached hereto as Exhibit "B").  Venue is proper with this Court pursuant to 29 U.S.C. § 1391(b)(1) because the Union resides, exists, and operates in the Commonwealth of Pennsylvania in which this district is located and 29 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this case occurred in this district.

2.    Jurisdiction is likewise proper pursuant to 28 U.S.C. §1331 as Schneider's is engaged in interstate commerce and this dispute directly implicates both Section 301 of the Labor Management Relations Act ("LMRA"), codified at 29 U.S.C. § 185, and the Federal Arbitration Act ("FAA"), codified at 9 U.S.C. § 10.  To be sure, 29 U.S.C. § 185(a) provides in pertinent part

1

that "[s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

## II.     PARTIES

3.     Plaintiff Schneider's Dairy is a Pennsylvania corporation with its principal place of business in Whitehall, Pennsylvania.  In addition to its main facility, Schneider's Dairy has two distribution centers located in Seneca, Pennsylvania and Washington, Pennsylvania, respectively.  Schneider's is an employer within the meaning of Section 2(2) of the LMRA, codified at 29 U.S.C. § 152(2).

4.     Respondent is a labor organization within the meaning of 29 U.S.C. § 152(5), and serves as the exclusive bargaining agent for all of Schneider's clerical employees employed at its Seneca, Pennsylvania distribution center.

## III.    FACTS

5.     Founded in 1935, Schneider's is a family-owned and operated dairy business.

6.     Schneider's presently has approximately 130 employees, and services all of western Pennsylvania, northern West Virginia, eastern Ohio, and western New York.

7.     Its principle headquarters and processing plant are located at 726 Frank Street, Pittsburgh, Pennsylvania 15227, which is often referred to as its "Whitehall" facility.

8.     Schneider's also maintains two distribution centers located in Seneca, Pennsylvania and Washington, Pennsylvania.

9.     At the time of the issues in dispute in this matter, Mong's Dairy, a Division of Schneider's Dairy, Inc., operated out of Schneider's Seneca distribution facility.

10. Until recently, Schneider's maintained office staff at its distribution centers to perform clerical functions related to ordering, scheduling, shipping and financial matters.

11. The clerical staff at Schneider's Seneca facility are members of Teamster's Local Union No. 205, which maintains a collective bargaining agreement as the exclusive bargaining representative of such employees with Schneider's. The parties' most recent collective negotiations agreement had a term of March 1, 2016 through June 30, 2019.

12. Prior to April 26, 2018, the clerical staff at the Seneca, Pennsylvania distribution center was shared by a senior clerk, Amy Siegworth, and a clerk, Ms. Lisa Hutchinson. Hutchinson began working for Schneider's on or around September 13, 2011.

13. Unfortunately, Siegworth tendered her resignation and left the Company on April 26, 2018, leaving all of the clerical functions to Hutchinson and another non-union employee recently hired by Schneider's Dairy named Dawn Elliott.

14. It was not long before it became readily apparent that both Hutchinson and Elliott were struggling with the clerical functions they inherited following Siegworth's resignation, prompting David Schneider, Vice-President of Schneider's Dairy, to reach out to the Union's business agent, John Winters, on July 7, 2018 to express his frustrations with Hutchinson's inability to perform the clerical functions without significant oversight from senior management.

15. Respondent maintained that Hutchinson had not been properly trained to perform these functions, yet Mr. Schneider noted that she had performed these actual functions for five (5) weeks every year while Ms. Siegworth was on vacation and should have been more than equipped to handle the job duties. Moreover, Ms. Siegworth left detailed, step-by-step instructions as to how to perform these clerical functions upon her departure.

16.     By way of that same July 7, 2018 e-mail, Mr. Schneider stated that Schneider's was giving "serious consideration" to relocating all of the clerical functions to Schneider's headquarters in Whitehall, Pennsylvania. Dating back to 2016, calls were routinely forwarded to Schneider's headquarters when they were not answered in the Seneca distribution center, and so moving all of the clerical functions there was not completely unheard of.

17.     Mr. Schneider met with both Respondent and Hutchinson on July 24, 2018, during which time it was determined that in light of the fact that Hutchinson had taken on additional responsibilities since Siegworth's termination, Hutchinson would be promoted to senior clerk. Unfortunately, Elliott quit immediately following the meeting, leaving Hutchinson as not only the sole remaining member of the Union, but also the only available clerical employee in the Seneca office.

18.     In an effort to assist her in the performance of her duties, Schneider's exercised its managerial prerogative pursuant to Article 7(E) of the parties' collective bargaining agreement to move the call ordering functions to its Whitehall headquarters, where management personnel was tasked with performing some of the transferred clerical work. Article 7(E) states in pertinent part that "[f]urther past practice of management personnel performing work shall be continued." Upon doing so, Schneider's saw an immediate and marked increase in accuracy and efficiency in the performance of those particular duties.

19.     Despite the lessened workload, Hutchinson's efficiency did not improve, and she began incurring hours upon hours of overtime just so she could complete the daily tasks expected of Schneider's clerical employees. As a result of the increased overtime costs, and in an effort to further alleviate the burden on Hutchinson, Schneider's once again utilized its managerial

prerogative under Article 7(E) to remove the banking and incoming call reception from Seneca to its Whitehall headquarters.

20. In response, the Union filed three grievances on Hutchinson's behalf on August 13, 2018. The first of the three grievances challenged Hutchinson's hours of work, claiming that by virtue of the fact that Hutchinson was working overtime on a consistent basis, Schneider's had failed to adhere to the stated work hours in the parties' collective bargaining agreement. The second grievance filed by the Union challenged Schneider's failure to hire additional clerical employees at its Seneca facility to assist in the clerical functions being performed by Hutchinson. The third grievance challenged Schneider's decision to have non-bargaining unit members perform what they argued was unit work.

21. One week later, the Union filed a fourth grievance on Hutchinson's behalf alleging that she did not received back pay as a result of her retroactive promotion; however, that grievance was resolved.

22. The parties participated in non-binding mediation on the first three grievances on October 9, 2018, where it was recommended that Schneider's consider hiring an additional clerical employee.

23. Given that Schneider's had already taken measures to lighten Hutchinson's supposedly overwhelming workload, and that it simply did not have the money to hire an additional clerical employee, Schneider's declined to hire another employee and instead sought to once again accommodate Hutchinson's complaints by reconfiguring her daily schedule from 8:00 a.m. – 4:30 p.m. to 9:00 a.m. – 5:30 p.m., a right once again reserved to management pursuant to Article 7(E) of the parties' collective bargaining agreement. While Article 7(A) states that "[t]he normal workweek for all full-time employees shall be from 8:00 a.m. to 4:30 p.m., Monday through

5

Friday," Article 7(E) states in pertinent part that "[e]mployees shall be flexibly assigned work so long as they perform their regular duties."

24. The Union immediately filed a grievance on Hutchinson's behalf challenging Schneider's right to change her schedule, and after failing to resolve any of the aforenoted grievances at the lower levels of the parties' negotiated grievance procedure, the Union moved all of its pending grievances to arbitration in accordance with Step 3 of that same procedure on November 1, 2018.

25. By November 23, 2018, the only remaining functions being performed by Hutchinson were inventory entry, milk order, and route settlement, which comprised of only about 60% of the normal duties of a senior clerk (the title to which Hutchinson had been graciously promoted in response to the Union's complaints about her increased workload).

26. Given that Schneider's Whitehall employees had already assumed most of Hutchinson's duties over the course of the past few months, and the fact that Schneider's had seen more accurate and efficient production out of its Whitehall facility and little if any improvement from Hutchinson, Schneider's exercised its managerial right pursuant to Article 19 of the parties' collective bargaining agreement to transfer the remainder of its clerical functions to Whitehall effective November 23, 2018—something that it had considered doing as far back as July 7, 2018. Article 19 states in no uncertain terms:

> The company has the exclusive right and power to manage, control and conduct its business, to plan and direct the working forces including the right to hire, suspend, discharge, promote, demote, schedule or transfer its employees for just cause and to make rules relating to operations as it deems advisable subject, however, to other provisions of this Agreement and past practices.

27. Schneider's nevertheless offered Hutchinson the opportunity to transfer to Whitehall herself, which she declined to do.

28. Instead, the Union filed two additional grievances on Hutchinson's behalf on November 27, 2018: one challenging Schneider's use of non-bargaining unit members to perform clerical unit work; and a second challenging Schneider's alleged termination of Hutchinson without just cause.

29. The Union also filed an unfair practice charge with the National Labor Relations Board ("NLRB") on December 19, 2018—which it thereafter amended on April 24, 2019—alleging violations of Sections 8(a)(1), (3), and (5) of the National Labor Relations Act ("NLRA"). In particular, the Union alleged that Schneider's discriminated against Hutchinson by discharging her employment for engaging in protected union activities and that Schneider's equally failed to bargain collectively and in good faith when it unilaterally changed Hutchinson's work hours and job duties and subsequently transferred a unit position from its Seneca facility to its Whitehall facility.

30. By way of letter dated April 29, 2019, the NLRB advised that it would be deferring decision on the Union's charge to arbitration, claiming that all of the issues in the charge appear to be covered by the provisions of the parties' collective bargaining agreement.

31. In accordance with Step 3 of the parties' negotiated grievance procedure (set forth at Article 4(B) of the parties' collective bargaining agreement), the parties utilized the Federal Mediation and Conciliatory Service to select Arbitrator Joseph Orlando ("Arbitrator"), who conducted an arbitration hearing on October 22, 2019 in Seneca, Pennsylvania.

32. Having presumably considered the testimony offered at the hearing, the relevant portions of the parties' collective bargaining agreement, and the parties' post-hearing submissions, the Arbitrator issued his Award on January 7, 2020 (although it was not physically received by Schneider's until January 8, 2020).

33. The Arbitrator's Award concluded in pertinent part that: (1) Schneider's unlawfully permitted non-bargaining unit employees to perform clerical work; (2) Schneider's unlawfully mandated that Hutchinson work an excessive amount of overtime to successfully complete the normal duties of a clerical employee; and (3) Schneider's unlawfully terminated Hutchinson's employment.

34. As a result, the Arbitrator ordered that: (1) Hutchinson be "reinstated immediately to her position and be made whole for any and all losses as a result of her loss of employment/wrongful termination"; (2) Schneider's immediately transfer back to its Seneca, Pennsylvania facility "all Clerical Bargaining unit work . . . normally and historically performed" there; and (3) Schneider's cease and desist from having supervisors perform bargaining unit work at either its Seneca facility or its Whitehall facility that is normally and historically performed by clerical bargaining unit members.

## IV. CAUSES OF ACTION

**Violation of Section 301 of the LMRA, the FAA, and Common Law – The Arbitrator's Award Fails to Draw its Essence From the Language of the Agreement and the Arbitrator Exceeded His Authority Under the Agreement in Issuing the Award**

35. Paragraphs 1-34 are re-alleged and reincorporated by reference as if fully set forth herein.

36. Section 301 of the LMRA permits a court to vacate an arbitration award where the arbitrator's decision does not draw its essence from the language of the agreement and where the arbitrator exceeds their authority in issuing the award.

37. The Third Circuit has likewise recognized that "when the arbitrator manifestly disregards the plain language of the CBA," his award cannot stand. *Monongahela Valley Hosp.,*

*Inc. v. United Steel Paper & Forestry Rubber Mfg. Allied Indust. & Serv. Workers Int'l Union AFL-CIO CLC*, 946 F.3d 195, 200 (3d Cir. 2019).

38. As a preliminary matter, the parties' collective bargaining agreement provides in no uncertain terms at Article 7(E) that "past practice of management personnel performing work shall be continued."

39. The Arbitrator's Award manifestly disregards this negotiated right specifically reserved to management when it proclaims that Schneider's must altogether cease and desist from assigning unit work to supervisors.

40. The parties' collective bargaining agreement likewise provides in no uncertain terms at Article 19 that the company "has the exclusive right and power to manage, control and conduct its business, to plan and direct the working forces including the right to hire, suspend, discharge, promote, demote, schedule or transfer its employees for just cause and to make rules relating to operations as it deems advisable . . . ."

41. Notwithstanding the foregoing, and without any discussion whatsoever concerning management's rights under Article 19 in the decision itself, the Arbitrator's Award directs that Schneider's immediately transfer back to its Seneca, Pennsylvania office all of the clerical work that it transferred to its Whitehall office pursuant to the authority reserved to Schneider's to make such decisions under Article 19. The Arbitrator's Award manifestly disregards Schneider's managerial rights under Article 19, and does so in a summary fashion without offering one scintilla of reasoning for its decision.

42. In that same regard, the Arbitrator similarly disregarded Schneider's managerial rights pursuant to Article 19 to transfer Hutchinson herself to its Whitehall facility—notwithstanding the fact that it offered Hutchinson the opportunity to do so and she declined—and

9

determined instead that she was constructively discharged, which the Arbitrator reasoned was as a result of retaliation for her decision to exercise her union rights.

43. The Arbitration Award must be vacated as a result of the Arbitrator's manifest disregard of the law and certain negotiated managerial rights.

44. The Arbitration Award must be vacated because it does not draw its essence from the express language of the contract.

45. The Arbitration Award must be vacated because the Arbitrator neglected to fully and faithfully execute his bargained-for obligations in failing to address those matters that were deferred by the NLRB to arbitration.

## V. PRAYER FOR RELIEF

WHEREFORE, Schneider's Dairy respectfully requests that this Court:

A. Enter an Order vacating the Arbitration Award;

B. Enter an Order enjoining the enforcement of the Arbitration Award; and

C. Grant such other declaratory, equitable, or legal relief and any and all other relief this Court may deem just and proper.

Dated: April 6, 2020								Respectfully submitted,

**GORDON REES SCULLY MANSUKHANI LLP**

BY: s/ *Craig Snethen*_____
Craig W. Snethen
Pa. I.D. No. 86050
707 Grant Street, Suite 3800
Pittsburgh, PA 15219
(412) 577-7400
(412) 347-5461 (fax)
csnethen@grsm.com

*Attorney for Plaintiff Mong's Dairy,*
*A Division of Schneider's Dairy Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Complaint to Vacate Arbitration Award, supporting Memorandum of Law, and Declaration of David Schneider was served by the Court's ECF system and electronic mail, this 6th day of April, 2020, upon the following counsel of record:

R. Anthony DeLuca, Esquire
DeLuca, Ricciuti & Konieczka
225 Ross Street, 4th Floor
Pittsburgh, PA 15219
anthony@drklawyers.com

*Counsel for Plaintiff*

**GORDON REES SCULLY MANSUKHANI LLP**

BY:   */ s/ Craig Snethen*___
      Craig Snethen