IN THE UNITED SYAYES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MONG'S DAIRY, a Division of
SCHNEIDER'S DAIRY, INC.,

        Plaintiff,

                              Case No.: 2:20-cv-00482-AJS

   v.

TEAMSTERS LOCAL UNION NO. 205,

        Defendant,

## BRIEF IN SUPPORT OF DEFENDANTS[1] MOTION FOR JUDGMENT ON THE PLEADINGS

AND NOW, comes Defendant, Teamsters Local Union No. 205, by and through its attorney, R. Anthony Deluca, Esq., and submits this Brief in Support if its Motion for Judgment on the Pleadings

### I.    HISTORY OF THE CASE

Regarding factual history, Defendant incorporates by reference the content of Arbitrator Joseph J. Orlando, Jr's January 7, 2020 Award by reference pursuant to Fed.R.Civ.P. 10(c) as though said Award was set forth herein at length. On April 6, 2020, Schneider's filed a Complaint to Vacate Arbitration Award in the above-captioned matter. On April 7, 2020, Schneider's filed a Memorandum of Points and Authorities in Support of Schneider's Dairy's Complaint to Vacate Arbitration Award. Respondent is not contesting jurisdiction or venue.

Pertinent provisions of the parties CVA are set forth below:

**ARTICLE NO. 4 – GRIEVANCES AND STRIKES**

    A. <u>General Statement</u>: All disputes between the parties shall be settled in accordance with the grievance procedure ….

---

[1] Plaintiff's Complaint designates Teamsters Local Union No. 205 as "Respondent", however, Teamsters Local Union No. 205 believes "Defendant" is the appropriate designation and shall use Defendant throughout this Memorandum.

B. Grievance Procedure:

* * * *

Step Three:
In the event no agreement is reached in the Second Step, either the Union or the Employer may, upon written notice to the other, appeal the grievance to arbitration ….

    a. The decision of the impartial arbitrator shall be final and binding on the parties and on any employees involved. ….

* * *

    c. In a discharge or suspension case, the impartial arbitrator shall have the authority to sustain the suspension or discharge, or if he finds the suspension or discharge was not proper, he shall habe the authority to order reinstatement and compensation for time lost in whole or in part, ….

* * * *

## ARTICLE NO. 7 – WORK WEEL AND HOUR REGULATIONS

* * *

D. Reasonable overtime is to be offered to the employees working the bid job. ….

E. Employees shall be flexibly assigned work so long as they perform their regular duties. This section shall be interpreted in accordance with past practices. Further past practice of management personnel performing work shall be continued.

* * * *

## ARTICLE NO. 19 – MANAGEMENT RIGHTS

The employer has the exclusive right and power to manage, control and conduct its business, to plan and direct the working forces including the right to hire, suspend, discharge, promote, demote, schedule or transfer its employees for just cause and to make rules relating to operations as it deems advisable subject, however, to other provisions of this Agreement and past practices.

04/01/2017-06/30/2019 CBA at pp. 2, 3, 4-5. 11.

    II.    DISCUSSION

### 1. Pertinent Statutory Provisions

… at any time within one year after the award is made any party to the arbitration may apply to the court … for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. ….

9 U.S.C. §9 (Award of arbitrators; confirmation; jurisdiction; procedure).

(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
  (1) where the award was procured by corruption, fraud, or undue means;
  (2) where there was evident partiality or corruption in the arbitrators, or either of them;
  (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
  (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

8 U.S.C. §10(a) (same; vacation; grounds; rehearing)/

 In either of the following cases the United States court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration—

 (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
 (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
 (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

9 U.S.C. §11 (same; modification or correction; grounds; order)/

   There is a strong presumption under the Federal Arbitration Act, 9 U.S.C. § 1 et seq., in favor of enforcing arbitration awards. ….  an award is presumed valid unless it is affirmatively shown to be otherwise, and the validity of an award is subject to attack only on those grounds listed in … § 10, or if enforcement of the award is contrary to public policy.

Brentwood Medical Associates v. United Medical Workers, 396 F.3d 237, 241 (3d Cir.2005)

(footnote and citations omitted).

The FAA requires courts to "enforce arbitration agreements according to their terms." …. Although courts may ordinarily accomplish that end by relying on state contract principles, … state law is preempted
to the extent it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives" of the FAA, ….

Lamps Plus, Inc. v. Varela, 139 S.Ct. 1407, 1415 (2019) (citations omitted).[2]

Congress enacted the FAA "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts."

Gay v. CreditInform, 511 F.3d 368, 378 (3d Cir.2007) (citation omitted).

## 2. Arbitration Pursuant to a CBA

Courts play a very limited role in reviewing the decision of an arbitrator appointed pursuant to a collective bargaining agreement. …. "When the parties include an arbitration clause in their [CBA], they choose to have disputes concerning constructions of the contract resolved by an arbitrator." …. Consequently, we "are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." …. This follows from the fact that the arbitrator's judgment was bargained for by the parties. …. "Full-blown judicial review of labor arbitrators' decisions would annul the bargain of the parties for an arbitrator's construction of their [CBA]" and replace it with the court's construction. ….

Therefore, we do not review an arbitrator's award for legal error. …. "As long as the arbitrator's award draws its essence from the [CBA] and is not merely [the arbitrator's] own brand of industrial justice, the award is legitimate." …. "Only where there is a manifest disregard of the agreement, totally unsupported by the principles of contract construction and the law of the shop, may a reviewing court disturb the award." ….

Accordingly, the award stands "even if the court finds the basis for it to be ambiguous or disagrees with its conclusions under the law." ….

Therefore, a court can only vacate an arbitrator's award "if it is entirely unsupported by the record or if it reflects a manifest disregard of the agreement." …. "An arbitrator's decision need be neither wise nor internally consistent.".… The decision is "subject to a standard of only minimal rationality." ….

---

[2] See Government of the Virgin Islands v. United Industrial Workers, N.A., 169 F.3d 172, 176 (3d Cir.1999) ("The FAA thus mandates that federal courts not review substantive decisions of arbitrators").

4

It follows that a reviewing court must defer to the arbitrator's factual findings. …. "Findings of fact and inferences to be drawn therefrom are the exclusive province of the arbitrator." …. It is not the court's "role to draw inferences that the factfinder did not." …

Nevertheless, "an arbitrator has the authority to decide only the issues actually submitted." …. "It is the responsibility of the arbitrator in the first instance to interpret the scope of the parties' submission, but it is within the courts' province to review an arbitrator's interpretation." ….

CITGO Asphalt Refining Co. v. Paper, Allied-Industrial, Chemical, and Energy Workers International Union Local No. 2-991, 385 F.3d 809, 815-816 (3d Cir. 2004) (citations omitted).[3]

See Gay v. CreditInform, 511 F.3d 368, 386 (3d Cir. 2007) (citation omitted) ("'the district court is not to consider the merits of the claims giving rise to the controversy, but is only to determine[] … whether there is a valid agreement to arbitrate. Once such an agreement is found, the merits of the controversy are left for disposition to the arbitrator'").

> the narrow issue before us is whether the arbitrator's conclusion is supported, in any way, by a rational interpretation of the collective bargaining agreement. …. we ask merely whether the parties to the collective bargaining agreement got what they bargained for, namely an arbitrator who would first provide an interpretation of the contract that was rationally based on the language of the agreement, and second would produce a rational award.

Brentwood Medical Associates, 396 F.3d at 241-242. See Exxon Shipping Co., 73 F.3d at 1297 (citation omitted) ("findings of fact and inferences to be drawn therefrom are the exclusive province of the arbitrator").

### 3. Bargaining for Arbitration v. Litigation

When parties knowingly and voluntarily bargain for arbitration to resolve disputes, they receive the benefits of fast results and reduced dispute-resolution expenses. …. These benefits, however, do not come without risk, and "the possibility of receiving

---

[3] See Exxon Shipping Co. v. Exxon Seaman's Union, 73 F.3d 1287, 1291 (3d Cir.), cert. denied sub nom. SeaRiver Maritime v. Exxon Seaman's Union, 517 U.S. 1251 (1996) (citation omitted) ("'the refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards'").

inconsistent or incorrect rulings without meaningful appellate review of the merits is one of the risks such parties must accept when they choose arbitration over litigation." Id. In short, "[i]t is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation is different from his." ….

\* \* \* \*

…. Arbitration is all about "private court adjudication," and the use of arbitration has been rapidly increasing over the years and shows no signs of slowing. Arbitration procedures themselves have a lengthy history, with law merchant origins in medieval Europe and elsewhere. At bottom, arbitration is a kind of settlement technique in which a third party reviews the case and imposes a decision that is legally binding on both parties. It is designed to be faster and cheaper than resolving a matter in the trial courts, and it should not be subject to a lengthy and expensive judicial review.

Akers Nat'l Roll Co. v. United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers Int'l Union, 712 F.3d 155, 161, 164 (3d Cir.2013) (citation omitted).

### 4. The Essence Test[4]

A collective bargaining agreement represents a contractual accord reached between an employer and its employees. If such a contract includes an arbitration clause, it is assumed that the parties bargained for a grievance resolution procedure in which an arbitrator would interpret the agreement. It is thus not the role of a court to correct factual or legal errors made by an arbitrator. …. A district court may determine only whether or not an arbitrator's award "draws its essence" from the parties' collective bargaining agreement, … and we apply this same standard in reviewing the arbitration award. …. Once a court is satisfied that an arbitrator's award draws its essence from a collective bargaining agreement, it is without jurisdiction to consider the award further.

An award draws its essence from a collective bargaining agreement if its interpretation can *in any rational way* be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention. …. "As a general rule, we must enforce an arbitration award if it was based on an arguable interpretation and/or application of the collective bargaining agreement, and may only

---

[4] Schneider's does not assert grounds for vacating the award under 9 U.S.C. § 10(a)-(c) and there is no record support for such grounds in any event as there is no corruption, fraud, undue means, partiality, or prevention of a party from obtaining and submitting evidence in the arbitration process of the issuance of the award. Likewise, Schneider's does not invoke or set forth, and the record doesn't support, any grounds for modification of the award under 9 U.S.C. §11. Similarly, there is no assertion of or support for violation of public policy. Rather, Schneider's claims are limited to 9 U.S.C. §10(d) and the essence test developed thereunder.

6

vacate it if there is no support in the record for its determination or if it reflects manifest disregard of the agreement, totally unsupported by principles of contract construction." …. Therefore, we will not disturb an arbitration award "even if we find the basis for it to be ambiguous or disagree[] with [the arbitrator's] conclusions under the law." ….

Brentwood Medical Assoc., 396 F.3d at 240-241 (citations omitted; emp. in orig.).

An arbitration award does not "draw[] its essence" from a CBA where[] … an arbitrator not only fails to heed the plain language of the agreement but also exceeds his authority by injecting language into it that was already rejected in prior bargaining. The bar may be low to uphold an arbitration award, but it still exists.

Monongahela Valley Hospital, Inc. v. United Steel Paper Forestry Rubber Manu-facturing Allied Industrial & Service Workers International Union AFL-CIO CLC, 946 F.3d 195, 201 (3d Cir.2019).

"[A]n arbitrator 'may not ignore the plain language of the contract.'" Monongahela Valley Hospital, Inc., 946 F.3d at 199 (citation omitted). In addition, "findings of fact and inferences to be drawn therefrom are the exclusive province of the arbitrator." Exxon Shipping Co., 73 F.3d at 1297 (citation omitted).[5] Further, an arbitrator has no obligation to issue a written explanation for his/her award. Id. at 1297 (citations omitted) ("In fact, arbitrators have no obligation to explain their reasons for an award or even to write an opinion unless the contract so requires").

### 5. Analysis of Plaintiff's Claims

Plaintiff bears the burden of establishing a basis under governing law for vacating the arbitration award. Plaintiff claims the arbitrator did not dispose of all matters submitted to him. There is no allegation he ruled upon a matter not before him. Plaintiff does not specify what matter submitted to the arbitrator was not disposed of. The arbitrator was tasked with disposing

---

[5] See Exxon Shipping Co., 73 F.3d at 1295 (citation omitted) ("we may not 'second-guess[] the arbitrator's fact-finding'").

7

of 6 grievances asserted by Union and he did just that.[6] Not all rulings were favorable to Union but a failure to dispose of any grievance would prejudice Union and not employer—that is, any absence of a ruling on one or more grievances would not have led to a different ruling on the matters on which Plaintiff complains (e.g., reinstatement of Ms. Hutchinson and returning clerical work to the Seneca, PA facility).[7]

It appears the purported "omission" in the arbitrator's decision is his failure to address Union's grievance regarding retaliation against Ms. Hutchinson for engaging in protected activity. At pages 5, 6 and 8 of the Award, the arbitrator did address the anti-union retaliation claim and, in finding this particular grievance credible, found, at page 7, "the grievant's supervisor['s] … action(s) speak louder that words." Schneider's also points out errors in syntax and/or grammar and points out that the arbitrator commingled discussion of this particular grievance with that of another. Assuming there was no discussion of the retaliation grievance in the award, the award of reinstatement is supported by the resolution of one or more grievances. Hence, any shortcomings in the discussion of the retaliation grievances harmless as the same remedy is supported on other grounds.[8]

To the extent Schneider's asserts the arbitrator failed to consider, or erred in its

---

[6] Schneider's conflates its own exaggerated construction of the arbitrator's rulings and the arbitrator's award into cognizable grounds for vacating the award. Unlike Schneider's assertions in its Memorandum (at page 2), the arbitrator did not order "all" clerical work to be returned to the Seneca facility or prohibit management from performing clerical work. Rather, the arbitrator ordered return of clerical work previously performed at the Seneca facility to be returned and management was directed not to perform clerical work inconsistent with the past practice of non-bargaining unit members performing clerical work at that facility when two full-time and one part-time clerical employees could not complete the work.

[7] See Brentwood Medical Associates, 396 F.3d at 243 (footnote omitted) ("While it is true that the clearest support for the arbitrator's conclusion comes from the language he interpolated, there is sufficient substance in the remainder of the discussion to pass the minimum rationality threshold").

[8] See Brentwood Medical Associates, 396 F.3d at 243 ("the arbitrator's error was harmless, since he would have arrived at the conclusion he reached here, even absent the discussion of the aberrant language. As such, our inquiry into the award has reached its jurisdictional limit, and we must uphold it").

8

construction of, management rights as to transfer of unit work or otherwise, the arbitrator did address and consider management rights and it appears Schneider's is faulting the arbitrator for not giving an unrestrained construction of management rights. First, an arbitrator did not have to provide any explanation for his award and, thus, any issue regarding adequacy of a written analysis provided does not support vacating an award.[9] Second, past practice was incorporated into the CBA by several provisions of the CBA, including the management rights clause. Thus, past practice had to be considered.[10] Third, because the relevant past practices were not set forth in the CBA, the arbitrator had to make findings of fact as to what was the relevant past practice and whether it was violated.[11] The arbitrator found past practice under this CBA consisted of 2 full-time and one part-time unit employee performing clerical duties/functions at Schneider's Seneca facility; management performing clerical work was limited to work at the Seneca facility and not by non-bargaining unit employees at other facilities; and non-bargaining unit employees performed unit work "in times of vacation coverage and to help the two (2) filled positions catch up." Award at p. 6 (emphasis in original). Fourth, because that construction and the findings of violation thereof are supported by the record, they are binding on this Court.[12] Fifth, as part of the CBA, the arbitrator had to construe the relevant past practice and the express terms of the CBA in a manner to give effect to all provisions. Because the arbitrator did that and because his construction of the CBA is a rational interpretation thereof, the arbitrator properly applied

---

[9] See Akers Nat'l Roll Co., 712 F.3d at 162 (citation omitted) ("We note that '[a]rbitrators have no obligation to the court to give their reasons for an award'").

[10] See Monongahela Valley Hospital, Inc., 946 F.3d at 200 (citations omitted) ("'It is ... well established that contract language must be read in context and that 'a sub-sequent specification impliedly limits the meaning of a preceding generalization'")

[11] See Akers Nat'l Roll Co., 712 F.3d at 164 ("The Arbitrator considered the contentions of the parties, the evidence presented, and the history of the dispute between the[m] …. He then determined that he was required to decide whether the parties established a past practice … and whether that past practice was violated").

[12] See Brentwood Medical Associates, 396 F.3d at 243 (citation omitted) ("the arbitrator attempted to construe together, and then give effect to, all provisions of the agreement. While BMA may take issue with his contractual interpretation, this is not sufficient to justify vacatur of the award by this Court").

contract law and his findings and conclusions drew its essence from the CBA.[13]

Schneider's cites MV Transportation, Inc. and Amalgamated Transit Union Local #1637, AFL-CIO, 368 N.L.R.B. No. 66, 2019 NLRB Lexis 509 (2019) in support of its contention that Schneider's contention that it had the right to make inter-plant transfers of work or personnel and doing so did not constitute an unfair labor practice. The NLRB matter was referred to arbitration because the NLRB determined the charges concerned alleged violations of the CBA. Thus, the arbitrator was to determine whether and to what extent the CBA was violated, not whether an unfair labor practice was committed. Additionally, the only discussion of inter-plant/facility matters in the CBA is at Article 20 (Mergers and Sales), CBA at pp. 11-12, which addresses inter-plant seniority and, by its terms, is limited to the context of merger and sales and provides no force to the suggestion that the management rights clause of Article 19 extends beyond *intra*-plant management. Therefore, this subject does not fall within the scope of any provision of the CBA and, consequently, the clear and unmistakable waiver standard applies here. Thus, Union has pled a viable claim/charge under MV Transportation which the NLRB properly determined must be allowed to proceed to merits review by an arbitrator. Further, the NLRB's decision to defer the grievances to arbitration and conclusion that the arbitrator addressed all matters submitted to arbitration is not subject to review by this Court in this matter.

There is no genuine issue of material fact regarding the validity of the award in this matter and, therefore, the award must be confirmed and Plaintiff's request to vacate the award denied.[14] Plaintiff tries to controvert findings of fact made by the arbitrator but that is not a lawful basis on which to vacate an award.

---

[13] See Brentwood Medical Associates, 396 F.3d at 241 (citation omitted) ("it is our duty to resist the urge to conduct *de novo* review of the award on the merits").

[14] See Hamilton Park Health Care Center, Ltd v. 1199 SEIU United Healthcare Workers East, 817 F.3d 857, 864 (3d Cir.2016) (citation omitted) ("we will not 'reconsider the merits of an [arbitration] award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract'").

While Schneider's characterizes the arbitrator's rulings as the arbitrator's own brand if industrial justice, see 2:20pcv-482 Doc. #4 at p. 2, Schneider's is actually trying to overturn rulings—which draw their essence form the contract—with which it disagrees. This, Schneider's cannot do.[15] Some express provisions of the CBA, including management rights, were limited/qualified by, *inter alia*, "past practices" which were not set forth or described in the CBA and, thus, had to be construed by the evidence presented at the arbitration hearing and findings of fact thereupon. The arbitrator's construction of the CBA was not implausible and his findings and award were not beyond his authority.[16] To allow a party who is dissatisfied with rulings in an arbitration award to characterize them as incidents of the arbitrator dispensing his/her own brand of justice and obtain relief from those unfavorable rulings is to grant *de novo* judicial review of the parties' substantive dispute when such review wasn't bargained for by the parties and is not authorized by the FAA, LMRA, or the controlling authorities construing those statutes. The parties bargained for resolution of disputes through arbitration and Schneider's can't avoid the risks associated therewith through *de novo* judicial merits review.[17]

### III. CONCLUSION

Arbitrator Orlando's interpretation of the CBA is rational and gives effect to every relevant provision thereof and is not inconsistent with governing law. His findings of fact are supported by the record. He did not exceed his authority.

---

[15] See Exxon Shipping Co., 73 F.3d at 1296 ("Although the Chairman's opinion may not be a model of clarity, it is evident that he ultimately concluded that Exxon lacked 'cause' to require Cash to submit to a drug test. That Exxon now disagrees with that conclusion is not a ground for vacating his decision'").

[16] See Exxon Shipping Co., 73 F.3d at 1297 ("we cannot say that the arbitrator's reading of the contract is implausible and that his decision … was beyond the bounds of his authority").

[17] See Akers Nat'l Roll Co., 712 F.3d at 161 ("the Company accepted the risk of arbitration, and now seeks to avoid its result; we will not permit it to do so").

Accordingly, Defendant, Teamsters Local Union No. 205, respectfully requests that this Honorable Court grant Defendant's Motion for Judgment on the Pleadings and dismiss with prejudice the Plaintiff's Complaint to Vacate Arbitration Award.

Respectfully Submitted,

_____

R. Anthony DeLuca, Esquire
Attorney for Defendant